OPINION
David Boots was found guilty of child endangering by a jury in the Darke County Court of Common Pleas and was sentenced to four years of imprisonment. He appeals from his conviction.
The state's evidence established the following facts. On February 7, 2000, Susan Boots, age one, was treated at the Upper Valley Medical Center for a fracture in the bone in her upper arm. The treating physician suspected abuse and reported the injury to Darke County Children Services ("DCCS"). When DCCS investigated, Susan's father, David Boots, who had been the only adult with Susan at the time of the injury, gave inconsistent accounts of how and when the injury to Susan's arm had occurred. Boots was interviewed by two investigators, who were candid with him that they did not believe his initial claims that he did not know what had happened to Susan's arm or his suggestions that perhaps she had fallen, had been injured by her two-year-old brother, or had been accidentally injured while wrestling with Boots. Ultimately, Boots admitted to the investigators that, when Susan had gotten into some boxes that she was not supposed to touch, he had yanked on her arm, lifting her off of the ground, and he had heard her arm "pop." Boots also admitted that, after he heard the pop, he had put Susan on the couch, had told her to stop crying and that she was a bad girl, and had instructed her that she would have to stay on the couch until her mother came home. Susan was taken for medical attention later that evening.
Boots was indicted for child endangering in violation of R.C.2919.22(B)(1) on March 24, 2000. He was tried on January 30 and 31, 2001 and was found guilty as charged. Boots was sentenced as described supra. He raises two assignments of error on appeal.
 I. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO MISCONDUCT BY PROSECUTOR.
Boots claims that the prosecutor acted improperly in several respects and deprived him of his right to a fair trial.
In considering claims of prosecutorial misconduct, we must examine whether the prosecutor's conduct at trial was improper and, if so, whether that conduct affected the defendant's substantial rights. Statev. Lott (1990), 51 Ohio St.3d 160, 165. In analyzing the prosecutor's conduct, we must focus on the fairness of the trial, not the culpability of the prosecutor. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. Prosecutorial error exists if it is clear beyond a reasonable doubt that the jury would not have found the accused guilty absent the prosecutor's remarks. State v. Smith (1984), 14 Ohio St.3d 13, 15.
Boots claims that the prosecutor improperly defined reasonable doubt during voir dire by stating:
 Now, since it's so important that I prove each and every element beyond a reasonable doubt, it's also important for you to know what it means beyond a reasonable doubt. Proof beyond a reasonable doubt means that after you have heard all the evidence and testimony you cannot say that you are firmly convinced of the truth of the charges against the defendant.
 The prosecutor seems to have stated the opposite of what he intended in this instance because, when offered proof beyond a reasonable doubt, jurors can
say that they are firmly convinced of the truth of the charges against the defendant. We are confident, however, that Boots was not prejudiced by this misstatement. The trial court made clear to the jurors that they were required to apply the law as set forth by the court, and the trial court properly defined reasonable doubt and proof beyond a reasonable doubt for the jurors in open court and in its written instructions to the jury.
Two other matters to which Boots objects are matters to which he objected at trial. The prosecutor asked a DCCS caseworker about the condition of the Boots' home when she went there to investigate, and she responded that it had smelled of urine and there had been no food in the house. The prosecutor also asked a relative who was living with the Boots family at the time of the offense about what had happened at the house the morning after they took Susan to the hospital, and he testified that Boots had spanked Susan and told her to shut up when she had cried. In each of these instances, the trial court sustained an objection and instructed the jury to disregard the testimony. Even if we were to presume that the prosecutor asked these questions knowing that they would elicit irrelevant or prejudicial responses, we could not conclude that these questions affected the fairness of the trial in light of the trial court's admonitions to the jury.
Next, Boots argues that the prosecutor acted improperly in calling Tara Boots as a witness, knowing that some of her testimony would be disallowed pursuant to the spousal privilege. Boots contends that the prosecutor's intent was "to leave an impression with the jury that [Boots] did not want his wife to testify and [that he] was trying to hide incriminating evidence from the jury." In essence, Boots seems to argue that he was prejudiced by having to assert his privilege in the presence of the jury. We disagree. At the outset of Tara Boots' testimony, the trial court had ruled that there were some matters about which she would be permitted to testify, depending on the nature of the acts or communications and whether they had occurred in the presence of third parties who were competent to testify. After asking Tara a few questions about where they had lived and with whom, the prosecutor decided not to pursue further questions with her. Although Tara's testimony was not particularly helpful to the state, we cannot conclude that the prosecutor engaged in misconduct by calling her.
Boots also faults the prosecutor for putting the results of a study with which an expert witness was not familiar before the jury in the form of a question. The results of the study suggested that it was unlikely that a child would suffer a serious injury as a result of an accidental fall. Although it may have been improper for the prosecutor to pose this question, we cannot conclude that this behavior affected the fairness of the trial or its outcome. After all, Boots had admitted that he had inflicted the injury. As such, we are unpersuaded that abstract statistics about the likelihood that such an injury could have been caused by other means affected the outcome of the trial.
Finally, Boots contends that the prosecutor engaged in misconduct during closing argument by stating that "this kind of case upsets me," by mischaracterizing testimony, and by suggesting that the defense had not provided its expert witness with all of the relevant information. The prosecutor is entitled to a certain degree of latitude in closing argument, and it is within the trial court's discretion to determine the propriety of a closing argument. State v. Benge (1996), 75 Ohio St.3d 136,141. In this case, the trial court found that the prosecutor's conclusions in closing argument were "a fair characterization based upon the evidence." We agree. Moreover, we are unpersuaded that the prosecutor's statements affected the outcome of the case.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN IMPROPERLY INSTRUCTING THE JURY CONCERNING THE ELEMENT OF RECKLESSNESS.
Boots claims that the trial court's instruction to the jury on recklessness was "never clearly tied" to the rest of the jury instructions such that the jury did not know that it had to find that Boots had acted recklessly beyond a reasonable doubt.
Although the trial court defined reasonable doubt at the outset of its instructions to the jury and discussed recklessness later in the instructions, the court did make clear that recklessness was an element of the offense. It was defined in the same portion of the instructions as the other elements of the offense, and Boots did not object to the instructions that were given. Moreover, the definition given by the trial court comported with the definition set forth in Ohio Jury Instructions. See 4 Ohio Jury Instructions (2001) 62, Section 409.21(1). As such, we find this argument to be without merit.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.